**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-06-00262 |
| YORK SOUTHERN, INC.; ELLIS | § | (Jury Trial) |
| MELTON COMPANY, INC.; MELTON | § | |
| COMPANY, INC.; PRESLEY | § | |
| MELTON; MARK MELTON and | § | |
| ADAM MELTON | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, The York Group, Inc., ("York") files this Plaintiff's First Amended Complaint complaining of defendants York Southern, Inc. ("York Southern"); Ellis Melton Company, Inc. ("Ellis Melton Co."); Melton Company, Inc. ("Melton Co."); Presley Melton; Mark Melton and Adam Melton (collectively, the "Melton Defendants"). In support thereof, Plaintiff would respectfully show unto this Court as follows:

### I.

### OVERVIEW OF FACTS AND CLAIMS

1.      This is an action for unfair competition and tortious interference with contract. York is one of the oldest and largest manufacturers of caskets in the United States, a respected industry leader. York's products, trademarks, brand names and other marks are associated with high-quality. York sells its caskets to distributors, who sell to funeral homes which, in turn, sell to individual customers.

2.      This action is made necessary because the Melton Defendants entered into a civil conspiracy with others to have "knock-offs" or "look-a-likes" of York's caskets manufactured in China (the "Chinese caskets") and distributed throughout the United States under false

designations of origin.   More specifically, the Chinese caskets were:   a) falsely labeled "Horizon", b) "Horizon" warranties were placed in the caskets, and c) "Horizon" marketing literature was distributed.   Yet, "Horizon" was a false, deceptive and misleading designation of origin.   In reality, the caskets were manufactured in China by Shanghai Tops Furniture Co ("Shanghai Tops") and Wuxi Taihu Tractor Company ("Wuxi").   But, they were not labeled "Made in China", as required by law:   a) 19 U.S.C. § 1304 (the "Tariff Act") requires that foreign products be permanently marked with their country of origin; and b) 15 U.S.C. § 1125 (the "Lanham Act") prohibits *inter alia* false designations of origin.   In furtherance of their scheme, the conspirators made unauthorized use of York's designs, trademarks, trade dress, brand names and other marks, and copyrighted material, in commercial advertising and promotion of the Chinese caskets.   All of this conduct was likely to and did cause confusion, mistake or deception among consumers regarding the affiliation, connection or association of the conspirators and/or the origin, sponsorship or approval of their goods or services, and/or misrepresented the nature, characteristics, qualities or geographic origin of their goods.   As such, all this conduct also violates the Lanham Act, 15 U.S.C. § 1125 and constitutes unfair competition under the common law.   Such conduct has caused York irreparable harm and substantial damages and York hereby sues for injunctive relief and monetary recovery.

3.      Furthermore, the Melton Defendants have intentionally interfered with York's contracts. More specifically, York had contracts with various distributors throughout the United States. The Melton Defendants, acting individually and as part of the conspiracy, intentionally interfered with York's distributor contracts by, *inter alia*, inducing various York distributors to participate in the Chinese casket scheme in breach of their contractual obligations to York.   Such conduct has caused York substantial damages and York hereby sues for monetary recovery.

## II.

## PARTIES

4.     Plaintiff York is a Delaware corporation with its principal place of business at Two North Shore Centre, Pittsburgh, Pennsylvania.

5.     All of the Melton Defendants have engaged in business in the State of Texas.   None maintain a designated agent for service of process in Texas.   Accordingly, all may be served with process by serving the Texas Secretary of State, pursuant to Sections 17.044 and 17.045 of the TEX. CIV. PRAC. & REM. CODE.

6.     Defendant Ellis Melton Co. is an Arkansas corporation with its office located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451.  Melton Company has been previously served with process through Texas Secretary of State and made an appearance through its counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582.

7.     Defendant York Southern is an Arkansas corporation with its office located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451.  York Southern has been previously served with process through the Texas Secretary of State and made an appearance through its counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582.

8.     Defendant Melton Co., upon information and belief, is an Arkansas corporation with its office located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451.  Melton Co. may be served with process by serving the Texas Secretary of State or by and through counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582.

9.      Defendant Presley Melton is an individual residing in Arkansas, who has been previously served at his place of business located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451, through the Texas Secretary of State.  Mr. Presley Melton made an appearance through his counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582.

10.     Defendant Mark Melton, upon information and belief, is an individual residing in Arkansas, who may be served at his place of business located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451.  Mr. Mark Melton may be served with process by serving the Texas Secretary of State or by and through counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582.

11.     Defendant Adam Melton, upon information and belief, is an individual residing in Arkansas, who may be served at his place of business located at 5900 Patterson Rd., Little Rock, Arkansas 72209-2451.  Mr. Adam Melton may be served with process by serving the Texas Secretary of State or by and through counsel, Douglas H. Elliott, Patterson & Sheridan, L.L.P., 3040 Post Oak Blvd., Suite 1500, Houston, Texas 77056-6582

### III.

### JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over the Melton Defendants because a substantial part of the events giving rise to these causes of action occurred in Texas.  28 U.S.C. § 1391(a)(2).  Alternatively, each of the Melton Defendants has sufficient contacts with the State of Texas to comply with the relevant constitutional and statutory requirements.  This Court has subject matter jurisdiction because the matters in controversy fall within this Court's general jurisdiction, and the amount in controversy exceeds this Court's minimum jurisdictional limits.

13.     Venue is proper in this Court, because by written contract, Ellis Melton Co. and/or York Southern agreed that Harris County, Texas shall be the proper place of venue for all actions relating to the Distributor Agreement (and this action does relate to that contract).  In addition, upon information and belief, venue is proper because a substantial part of the cause of action arose in Harris County.  28 U.S.C. § 1391(a)(2).

## IV.

## **FURTHER FACTS**

### **Contractual Obligations of York Distributors to York**

14.     Since at least the 1930's, York and its predecessors have been engaged in the design, manufacture, advertising, distribution and sale of metal and wood caskets for use in the funeral industry throughout the United States.  York is one of the largest domestic manufacturers of all-wood caskets and one of the world's leading manufacturers of caskets.

15.     Various companies have entered into separate Distributor Agreements with York, including but not limited to the following:  Delta Casket Company, Inc. ("Delta Casket"); Delta Casket Enterprises, Inc. ("Delta Enterprises"); Yorktowne Caskets, Inc. ("Yorktowne"); Warfield-Rohr Casket Company ("Warfield-Rohr"); Royal Casket Company, Inc. ("Royal"); and Ellis Melton.   Under these Distributor Agreements, the York distributors separately acknowledged, *inter alia,* York's exclusive ownership of all York "trademarks, trade names, servicemarks, copyrights, patents, brand names, labels, symbols or other proprietary rights, including the trade dress of York's products (collectively, the 'Marks')"; and, the York distributors agreed, *inter alia*: a) to use the Marks in such a manner so as best to preserve York's interests in the Marks; b) to not sell any caskets under any mark of York which are not products of York; c) to not use any mark that is similar to a Mark by itself or in combination with any other words, symbols or designs with the express written authorization of York; d) to use good

faith best efforts to sell and promote York's products; e) to not to use any Mark after termination of the relationship or do any other act tending to impair or damage the Marks; and, f) to not act in any manner detrimental to the sale and distribution of the Products or to the reputation or goodwill of York or its products. As discussed below, by participating in the Chinese casket scheme, various York distributors breached these contractual obligations to York. The York Distributor Agreements provide that venue of any dispute related thereto would lie exclusively in Houston, Texas and that Texas law would govern.

16.    For years, York has identified its caskets by use of the Marks in marketing, advertising, distribution, and sales of the products, throughout the United States. The value of the Marks to the success of York and the sale of its products is immense. The Marks have acquired widespread recognition, distinction and value in the industry.

### Further Background Facts

17.    Initially, the civil conspiracy involved at least William Grubbs ("Grubbs"), Gerald Kilpatrick ("Kilpatrick"), their companies Delta Casket and Delta Enterprises, two Chinese manufacturers (Shanghai Tops and Wuxi) and others. Upon information and belief, the Melton Defendants joined the conspiracy as early as 2003. The conspirators planned to manufacture Chinese caskets that were "knock-offs" or "look-a-likes" of York caskets and to market them in the United States using York's brand names and other Marks, all without York's permission.

18.    In furtherance of the scheme, the conspirators shipped or caused to be shipped to Shanghai Tops and Wuxi genuine York caskets for study, planning and use in the scheme. The conspirators lent their counsel, advice, aid and support to Shanghai Tops' and Wuxi's efforts to manufacture the Chinese "knock-offs" or "look-a-likes" of York's caskets and sell them in the United States.

19.     In furtherance of the scheme, the conspirators caused the Chinese caskets to be marked and marketed under a literally false designation of origin—"Horizon" labels were placed on the caskets, "Horizon" warranties were placed in the caskets, and "Horizon" marketing literature was distributed in the marketplace. Yet, "Horizon" was not the casket's source of origin. Instead, the caskets came from China, from Shanghai Tops and Wuxi.

20.     In furtherance of the scheme, the Chinese caskets were not labeled "Made in China", as required by United States law, nor did any of the written marketing literature or the invoices for such caskets disclose that the caskets were made in China. Instead, when they were sold in the United States, invoices for the caskets referenced each casket using York brand names—a further act of false, deceptive and misleading representation of origin and affiliation. These and other artifices were employed by the conspirators to create the false impression that "Horizon" caskets were United States products and/or were affiliated with York, when they were not. In fact, Horizon Casket Group Inc. was formed by several of the conspirators and functioned as a mere shell, with no place of business of its own, no employees, and insufficient assets to satisfy its liabilities. It was a mere front used by the conspirators to perpetrate their illegal scheme.

21.     In furtherance of the scheme, the conspirators used York designs, trademarks, trade dress, brand names and other marks, and copyrighted materials to facilitate the "passing off" of the Chinese caskets as products made in the United States and, indeed, as products of York.

22.     The conspirators' conduct was likely to cause and has caused confusion, mistake or deception among consumers as to the affiliation, connection or association of the conspirators with York and/or as to the origin, sponsorship or approval of the conspirators' goods and/or services. The conspirators' conduct in commercial advertising or promotion of the Chinese caskets misrepresents the nature, characteristics, qualities or geographic origin of the Chinese

caskets and the services related thereto.   For example, one "Horizon" pricelist directed consumers to "visit us on the web"; and, when a consumer would visit the website and look for the brand name of casket shown on the pricelist, the consumer would find a copyrighted picture of a York casket with that brand name.   This and other conduct complained of herein, was likely to injure and has injured York and has diluted York's Marks.

23.      Defendants' conduct as alleged herein violates the Lanham Act, 15 U.S.C. § 1125.

24.      Defendants' conduct as alleged herein violates other laws of the United States and of the State of Texas, and constitutes unfair competition.

25.      Moreover, the Melton Defendants, and those acting in concert with them, intentionally interfered with York's contracts with various York distributors, including but not limited to Delta Casket, Delta Enterprises, Yorktowne, Warfield-Rohr, Royal and Ellis Melton.   The Melton Defendants knew that these distributors had contracts with York.   The Melton Defendants knew or should have known that the contracts obligated York's distributors to use good faith, best efforts to promote York's products, to not misuse or impair York's brand names and other Marks, and to abide by their other contractual obligations to York, described above.   Yet, the Melton Defendants induced these York distributors to join, or to continue their participation in, the Chinese casket scheme, knowing that such participation would breach and devalue the distributors' contractual obligations to York.

26.      The Melton Defendants intentionally and maliciously proceeded with the Chinese casket scheme, knowing that it would interfere with and devalue York's distributor contracts.   Such conduct interfered with and devalued York's contracts and constitutes tortious interference. Such conduct has damaged York and will continue to damage York in the future.

27.     As mentioned above, the Chinese casket scheme was perpetrated by means of a civil conspiracy.  Acting in combination, concert and conspiracy with others, the Melton Defendants schemed to manufacture and then sell in the United States products that were falsely labeled, in violation of United States law, and they and others in concert with them engaged in these and other actions in furtherance of the conspiracy.  The conspiracy and the acts of the conspirators have substantially damaged York.  York hereby sues to hold each conspirator liable for the damages caused by the actions of any and all of the conspirators.

28.     Defendants' wrongful conduct is without authority or license from York.

29.     Upon information and belief, Defendants' conduct was willful, deliberate and committed with malice.  Accordingly, York seeks to recover enhanced statutory damages.  York seeks also to seek exemplary damages as permitted by law.

30.     The deliberate acts of the Melton Defendants caused, and will continue to cause, monetary damages and irreparable harm to the reputation and goodwill of York.  Damages alone are inadequate to fully compensate York for the harm caused, and which will be caused in the future, by such acts.  Accordingly, York seeks injunctive relief against the Melton Defendants, among other things, for:  (a) prohibiting the Melton Defendants from exporting to and/or importing into the United States any casket not properly labeled with the source of origin; (b) distributing, selling, or causing to be distributed or sold the Chinese caskets; and (c) directing that any such caskets be seized and destroyed whenever and wherever found.

31.     All conditions precedent to York's causes of action asserted in this Amended Complaint have been performed or have occurred.

**V.**

## CAUSES OF ACTION

### Count I—Unfair Competition and Trademark Infringement Against the Melton Defendants

32.     York re-alleges and incorporates by reference the preceding paragraphs of this Amended Complaint.

33.     The Melton Defendants' conduct, and that of those in concert with it, violates the laws of the United States, including the Lanham Act, 15 U.S.C. § 1125.  The conspirators' use of false designations of origin, on and/or in connection with the Chinese caskets, and in commercial advertising or promotion, violates the Lanham Act.  The conspirators' use of York's designs, trademarks, trade dress, brand names and other marks, and copyrighted materials to facilitate the Chinese casket scheme violates the Lanham Act.  All of such conduct was likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of the conspirators with another person, or as to the origin, sponsorship, or approval of their goods or services, and/or to misrepresent the nature, characteristics, qualities or geographic origin of their goods or services.  All of such conduct damaged York and continues to damage York, for which damages York hereby sues to recover herein.  All of such conduct was intentional and malicious.

34.     The conduct of the Melton Defendants also constitutes unfair competition under the common law of the State of Texas.  As a direct and proximate result of the foregoing conduct by the Melton Defendants, York was caused to suffer damages which it seeks to recover herein.

35.     York seeks to recover all actual damages, enhanced statutory damages, exemplary damages and such other amounts as York may be entitled to under the Lanham Act and at common law.

---

### Count II—Breach of Contract Against Ellis Melton Co. and York Southern

36.   York re-alleges and incorporates by reference the preceding paragraphs of this Amended

Complaint.

37.   On or about January 1, 1997, York and Ellis Melton Co. entered into the Contract, a

distribution agreement which was later amended on January 30, 2001.   Upon information and

belief, Ellis Melton Co. subsequently either merged with or changed its name to York Southern,

Inc.   Pertinent provisions of the Contract provide:

>  Section 4.1    Ownership of Marks.
>
>  Distributor acknowledges York's exclusive ownership of York's
>  trademarks, trade names, servicemarks, copyrights, patents, brand
>  names, labels, symbols or other proprietary rights (collectively, the
>  "Marks") ….
>
>  Distributor shall use the Marks in such a manner so as best to
>  preserve York's interests in the Marks, and Distributor shall not
>  acquire any right or interest, legal, equitable, or otherwise ….
>
>  Section 4.2    Use of Marks.
>
>  Distributor shall not, at any time during or **after** the Term, register
>  or use any mark that is similar to a Mark by itself or in
>  combination with any other words, symbols or designs without the
>  express written authorization of York.   (emphasis added).
>
>  \* \* \*
>
>  Section 5.1    Obligations of Distributor.   Distributor shall at all times
>  during the Term perform as follows, and Distributor agrees that any failure
>  to so perform shall constitute a material default under this Agreement.
>
>  \* \* \*
>
>  (c)    Use its good faith best effort actively and aggressively to
>  sell and promote the sale of the Products; . . . .
>
>  \* \* \*

Section 6.6     Obligations Upon Termination.

Upon termination of this Agreement for any reason:

(a)     Distributor ... shall not do any other act tending to impair or
damage the Marks.  (emphasis added).

38.     In breach of these contractual obligations, Ellis Melton Co. and/or York Southern
marketed and sold the Chinese caskets, used York's brand names, Marks and/or marks similar
thereto, and otherwise participated in and/or furthered the Chinese casket scheme.  As a direct
and proximate result of the foregoing acts by Ellis Melton Co. and/or York Southern, York was
caused to suffer damages for which it seeks recovery herein.

39.     As a part of its distribution contract, York agreed that Ellis Melton Co. could receive
discounts on its purchase of York products.  Ellis Melton Co. and/or York Southern took the
discounts, but did so while in breach of their contractual obligations to York.  York seeks to
recover a sum equal to such discounts as a part of its damages for the breach.  Moreover, York
seeks to recover all profits it lost because of the Chinese casket scheme, and any and all damages
it sustained by reason of such scheme.

40.     Moreover, the Contract specifically provides for venue in Harris County and injunctive
relief for any violation of its terms.  York hereby invokes such provisions in support of its
request for injunctive relief, set forth above.

### Count III—Tortious Interference Against the Melton Defendants

41.     York re-alleges and incorporates by reference the preceding paragraphs of this Amended
Complaint.

42.     Upon information and belief, the Melton Defendants have intentionally interfered with
York's contracts.  Accordingly, York sues the Melton Defendants for tortious interference with
contract.  As a direct and proximate result of such interference, York has suffered actual

damages and sues to recover all its actual damages.  Such interference has been intentional and done with malice, and York seeks to recover exemplary damages as permitted by law.

### Count IV—Conspiracy Against the Melton Defendants

43.     York re-alleges and incorporates by reference the preceding paragraphs of this Amended Complaint.

44.     Upon information and belief, the Melton Defendants have intentionally agreed to conspire and did conspire to export, import, sell and/or offer to unlawfully sell Chinese caskets using the York Marks and/or to provide aid and assistance to such scheme.  Upon information and belief, the Melton Defendants took specific overt actions to further the conspiracy.  As a direct and proximate result of the foregoing acts by Defendant, York has suffered damages. Accordingly, York seeks to hold the Melton Defendants liable for all damages caused by the conspiracy.

### Count V—Injunctive Relief Against the Melton Defendants

45.     York re-alleges and incorporates by reference the preceding paragraphs of this Counterclaim.  By virtue of the foregoing, York has demonstrated a likelihood of success on the merits and that the balancing of the equities favors the issuance of an injunction against Defendants to prevent further unfair competition, injurious to York.

46.     The acts of the Melton Defendants complained of herein have jeopardized and continue to jeopardize the goodwill of York and its valuable brand names and trademarks.  Such acts have caused, and are continuing to cause, irreparable injury to York.

47.     Unless the Melton Defendants' acts are enjoined by this Court, they will continue to cause irreparable harm to York as it has no adequate remedy at law.

48.     Accordingly, upon hearing, York requests that a temporary injunction and/or a permanent injunction be issued.  York requests a temporary and/or permanent injunction order that restrains

and enjoins each of the Melton Defendants, all persons acting in concert with them, and all persons with notice of the order, from:

    a)    exporting to and/or importing into the United States any Chinese casket manufactured by Shanghai Tops, Wuxi (or any other entity) that does not bear a prominent and permanent label on the casket which states at least the name of the manufacturer (*i.e.*, either "Shanghai Tops Furniture Co." or "Wuxi Taihu Tractor Company, Ltd.") and the country of manufacture (*i.e.*, "Made in China");

    b)    using in connection with the advertising, promotion, offer to sell, or sale of any Chinese casket, any word, phrase, symbol, device or combination thereof that is the same as, or similar to, any York trademark, trade name, brand name (including any names of caskets now marketed by York) or other marks of York; and

    c)    distributing, selling, or causing to be distributed or sold, within the United States any Chinese casket not labeled or sold in compliance with subsection a) and/or b), above.

49.    And, York requests that such order further provide that any Chinese casket manufactured by Shanghai Tops and/or Wuxi (or any other entity) that is found within the United States and which does not bear the prominent and permanent label required by subsection a), above, shall be seized by an officer of any court of competent jurisdiction, whenever and wherever found, and shall be destroyed by such officer pursuant to 15 U.S.C. § 1118 and/or other provisions of the Lanham Act and/or such court's inherent equitable powers.

50.    York also seeks to enjoin any and all other related acts this Court deems appropriate for injunctive relief, either temporary or permanent in nature.

### Count VI—Accounting Against All The Melton Defendants

51.    York re-alleges and incorporates by reference the preceding paragraphs of this Amended Complaint.

52.    York respectfully requests this Court to order the Melton Defendants to account to York for any profits derived by them because of the acts complained of herein.

## VI.

### JURY DEMAND

53.   Plaintiff respectfully requests, pursuant to the Federal Rules of Civil Procedure, that it be entitled to a trial by jury on all issues.  The requisite jury fee was tendered at the time of the original filing of the Jury Demand.

WHEREFORE, Plaintiff York respectfully requests that the Melton Defendants be cited to appear and answer herein and that this Court order the following relief and/or that upon a trial on the merits of this cause, York recover from the Melton Defendants as follows:

(1)   Accounting.  An Order requiring the Melton Defendants to account to York for any and all profits derived by the Melton Defendants as a result of any acts complained of herein;

(2)   Compensatory Damages.  That York be awarded compensatory and/or statutory damages in an amount yet to be determined because of the Melton Defendants' acts complained of herein to the maximum amount allowed under the Lanham Act, and all other laws, statutes and common law affording such relief;

(3)   Enhanced Damages.  That York be awarded enhanced  damages in an amount yet to be determined because of the Melton Defendants' acts complained of herein to the maximum amount allowed under the Lanham Act and/or all other laws, statutes and common law affording such relief;

(4)   Punitive Damages.  That York be awarded punitive damages in an amount yet to be determined;

(5)   Costs, Interest and Attorneys Fees.  That York be awarded costs, pre-judgment and post-judgment interest, and attorneys' fees incurred in this action in accordance with the Lanham Act, TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* and all other laws and statutes affording such relief;

(6)   Destruction of Infringing Counterfeit Caskets, Marketing Materials and Photographs.  That in accordance with the Lanham Act (15 U.S.C. § 1118) and relevant case law, after a finding of infringement, the Melton Defendants be required to remove from their websites all references to the York Marks and references to and/or photographs of York's caskets and to deliver up for destruction all counterfeit caskets, catalogs and other marketing and promotional literature that incorporate the York Marks or York's Copyrighted Materials;

(7)   <u>Destruction of Other Infringing Items</u>.  That in accordance with Lanham Act and relevant case law, the Melton Defendants be required to deliver up for destruction any and all boxes, containers, labels, signs, prints, packaging, wrappers, receptacles, catalogs, advertisements, displays, invoices, or other materials in the Melton Defendants' custody, possession, or control bearing the York Marks or any colorable imitation thereof;

(8)   <u>Injunctive relief</u>.  That this Court enter a Permanent Injunction that enjoins each of the Melton Defendants, their officers, agents, servants, employees, attorneys, and all other persons acting in concert or participation with any of them who receive actual notice of the order by personal service or otherwise from:

(a) exporting to and/or importing into the United States any Chinese casket manufactured by Shanghai Tops or Wuxi that does not bear a prominent and permanent label on the casket which states at least the name of the manufacturer (i.e., either "Shanghai Tops Furniture Co." or "Wuxi Taihu Tractor Company, Ltd.") and the country of manufacture (i.e., "Made in China");

(b) using in connection with the advertising, promotion, offer to sell, or sale of any Chinese casket, any word, phrase, symbol, device or combination thereof that is the same as, or similar to, any York trademark, trade name, brand name (including any names of caskets now marketed by York) or other marks of York; and

(c) distributing, selling, or causing to be distributed or sold, within the United States any Chinese casket not labeled or sold in compliance with subsection a) and/or b), above.

And, York requests that such order direct that any Chinese casket manufactured by Shanghai Tops and/or Wuxi that is found within the United States and which does not bear the prominent and permanent label required by subsection a), above, shall be seized by an officer of any court of competent jurisdiction, whenever and wherever found, and shall be destroyed by such officer pursuant to 15 U.S.C. § 1118 and/or other provisions of the Lanham Act and/or such court's inherent equitable powers.

(9)   <u>Relief</u>.  That this Court award Plaintiff York all such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Jeffrey R. Parsons
    **Jeffrey R. Parsons**
    Texas Bar No.:  15547200
    SD of Texas ID No.:  2411
    **BEIRNE, MAYNARD & PARSONS , L.L.P.**
    1300 Post Oak Blvd, 25th Floor
    Houston, Texas  77056
    Telephone:  (713) 623-0887
    Facsimile:  (713) 960-1527

**ATTORNEY-IN-CHARGE
FOR THE YORK GROUP, INC.**

**OF COUNSEL:**

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

**W. Michael Scott**
Texas Bar No.:  17918420
SD of Texas ID No.:  9987
**Bruce C. Morris**
Texas Bar No.:  14469850
SD of Texas ID No.:  14198
**David A. Walton**
Texas Bar No.:  24042120
SD of Texas ID No.:  57039
1300 Post Oak Blvd, 25th Floor
Houston, Texas  77056
Telephone:  (713) 623-0887
Facsimile:  (713) 960-1527

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Plaintiff's First Amended Complaint** was sent to the following attorneys-of-record by certified mail, return receipt requested, electronic notice and/or by facsimile transmission on this 24th day of April, 2006.

**Douglas H. Elliott**                                          *Via CM/ECF Electronic Notice*
PATTERSON & SHERIDAN, L.L.P.
3040 Post Oak Blvd., Suite 1500
Houston, TX  77056

**ATTORNEYS-IN-CHARGE FOR**
**DEFENDANTS**


                                          /s/ David A. Walton
                                          David A. Walton

618394v1