IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0262 |
| | § | |
| YORK SOUTHERN, INC., *et al.*, | § | |
|     Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a civil commercial lawsuit brought by Plaintiff The York Group, Inc. ("York") against York Southern, Inc., Ellis Melton Company, Inc., Melton Company, Inc., Presley Melton, Mark Melton, and Adam Melton. All Defendants have filed a joint Motion for Partial Summary Judgment ("Motion") [Doc. # 23] seeking an order barring York from monetary recovery as a consequence of its unreasonable delay in filing suit and its failure to mitigate damages. York has responded [Doc. # 37] and Defendants filed a reply [Doc. # 40]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that Defendants' Motion for Partial Summary Judgment should be **denied**.

I.    FACTUAL BACKGROUND

The undisputed evidence in the summary judgment record establishes the following facts. York, a manufacturer of caskets, sells its products through a network of distributors. Defendants were distributors of York's products pursuant to a Distribution Agreement

("Agreement") formed in 1997. York accuses one or more of Defendants, beginning in or around 2003, of engaging in unfair competition, trademark infringement, breach of contract, tortious interference, and conspiracy arising from Defendants importation of Chinese-made duplicates of York's caskets. *See* Plaintiffs' First Amended Complaint ("Complaint"), *passim*. York complains that Defendants have marketed these "knock-off" or "look-a-like" imported caskets with false labeling, *inter alia* failing to disclose that the caskets were made in China, and improperly using York's "trademarks, trade names, service marks, copyrights, patents, brand names, labels, symbols or other proprietary rights, including the trade dress of York's products (collectively, the 'Marks')." *Id.* at 5 & *passim*.

York filed this suit in December 2005. The parties dispute the date when York knew or should have known about Defendants' Chinese casket importation plan and acts to implement that plan. The parties also dispute whether and when York notified Defendants that it objected to their conduct, and whether Defendants suffered legally cognizable prejudice from York's alleged delay in voicing its objections.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th

Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.   LACHES

***May Defendants Assert a Laches Defense?*** — Defendants first argue that York unreasonably delayed asserting its claim against them and that the doctrine of laches bars

4

York from any recovery. "It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005) (citing *Badger v. Badger*, 2 Wall. 87, 94, 17 L. ED. 836 (1865) ("[C]ourts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights." (internal quotation marks omitted)); *Wagner v. Baird*, 7 How. 234, 258, 12 L. ED. 681 (1849) (same) (other citations omitted)); *see Nat'l Ass'n of Gov't Employees v. City Public Service Bd. of San Antonio, Texas,* 40 F.3d 698, 708 (5th Cir. 1994). Claims for accounting are equitable relief that may be barred by laches. *In re Jensen*, 946 F.2d 369, 372 (5th Cir. 1991); *see Clark v. Amoco Prod. Co.*, 794 F.2d 967, 971-92 (5th Cir. 1986) ("Laches is usually available only in suits strictly in equity or actions at law that involve claims of an essentially equitable character. . . . Appellants' prayer for an accounting is certainly a matter within the jurisdiction of equity." (internal citations omitted; analyzing Texas law)).

York initially responds that the majority of its claims are purely legal, with no equitable element that would permit the application of laches. This argument is belied in part by the relief York plainly seeks in its Amended Complaint, in Counts V and VI where York seeks "injunctive relief" and an accounting against all Defendants on the basis of the previously pleaded legal claims. Accordingly, each of York's claims is tied to a demand for equitable relief and the Court may consider the application of laches to bar relief. In any

event, although laches itself is an equitable doctrine, its use is not restricted merely to claims seeking equitable relief. *See Nat'l Ass'n of Gov't Employees,* 40 F.3d at 708 (applying laches to Title VII claims).

***Legal Requirements for Laches.*** — Before laches may bar a party's claim, the defendant must show that (1) the plaintiff delayed its assertion of a right or claim; (2) the delay was inexcusable; and (3) the defendant was unduly prejudiced by the delay.[1] *See Johnson v. Crown Enter., Inc.*, 398 F.3d 339, 344 (5th Cir. 2005) (quoting *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir. 1996)). The relevant time period to analyze delay for laches purposes may be terminated by a plaintiff's notification to a defendant that the latter's actions are objectionable. *See Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d

---

[1] York's breach of contract claims are governed by Texas law. *See* Agreement, § 8.13. Laches under Texas law is very similar to that under Fifth Circuit authority. Laches is an equitable doctrine analogous to a statute of limitation at law, *Clark v. Amoco Production Co.*, 794 F.2d 967, 971 (5th Cir. 1986) (citing *Jackson v. Tom Green County.*, 208 S.W.2d 115, 118 (Tex.Civ.App. 1948)), and "is an affirmative defense that must be pled and proven by the defendant." *Id.* at 971 (citing *City of Fort Worth*, 388 S.W.2d at 403; *Preston v. Williams*, 427 S.W.2d 157, 160 (Tex.Civ.App. 1968)). Laches under Texas law rests on two elements: (1) an unreasonable delay in bringing a claim although otherwise one has the legal or equitable right to do so, and (2) a good faith change of position by another, to his detriment, because of this delay. *Id.* (citing *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964); *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167, 170 (1943)); *see Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997). Its application rests on issues of fact. *Id.* (citing *Gause v. Gause*, 430 S.W.2d 409, 414 (Tex.Civ.App. 1968); *Culver*, 176 S.W.2d at 170). "Laches prevents parties from seeking equitable relief if they have improperly simply rested on their claims and the defendants would be prejudiced as a result of this delay. Laches ordinarily applies when there is no analogous statutory limitation to draw upon." *Id.* (citing *Transportation League, Inc. v. Morgan Express,* Inc., 436 S.W.2d 378, 388 (Tex.Civ.App.1969)).  There is no difference material to this case between the state and federal standards for laches.

1155, 1162 (5th Cir. 1982).  For reasons explained hereafter, Defendants have failed to show the absence of genuine issues of fact.[2]

*Was There Delay?* — Defendants' Motion sets out a variety of dates on which it contends York knew or should have known that it had a cause of action against Defendants arising from the importation of Chinese-made caskets.  *See Armco*, 693 F.2d at 1161-62 ("The objective standard of 'knew or should have known' is a logical implementation of the duty to police one's mark").  There appears to be no dispute that York, through Joseph Bartolacci, President and Chief Executive Officer of York's corporation, was aware of Defendants' allegedly wrongful behavior no later than September 2004, more than one year before York filed suit in December 2005.  *See* Affidavit of Joseph Bartolacci, Exhibit 8 to Plaintiff's Response, ¶ 4.  The Court therefore uses September 30, 2004 as York's date of actual knowledge for purposes of triggering the laches analysis for Defendants' Motion.  The real issue pertaining to "delay," the first element of the laches defense, then, is when York voiced its objections and thus attempted to exert its rights.

In his affidavit, the Bartolacci explains that he learned of Defendants' actions at a meeting with a third party at which Presley Melton and other York distributors attempted to persuade that party to purchase imported Chinese caskets.  Bartolacci explains that he "made it clear to all attendees, including Mr. Melton, that the manner in which Horizon [the shell company and name through which Defendants sold their imported products] was marketing and selling its caskets was not legal and that York did not approve."  Bartolacci Affidavit,

---

[2] The Court addresses the "prejudice" prong, *infra*.

¶ 14. Defendants respond that Bartolacci's affidavit averment should be stricken because it conflicts with his testimony in an earlier deposition. Bartolacci stated, when asked during the deposition whether he had presented his objections to Presley Melton, "I don't recall speaking to Mr. Presley Melton regarding this matter at all, sir."

"It is well settled that [the Fifth Circuit] court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *accord Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002)*; Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 385-87 (5th Cir. 2000). Nevertheless, when an affidavit merely supplements or clarifies, rather than contradicts prior deposition testimony, a court may consider the affidavit when evaluating genuine issues in a motion for summary judgment. *S.W.S. Erectors*, 72 F.3d at 496. The reasonable interpretation of Bartolacci's deposition testimony is that he did not speak directly to Presley Melton individually about York's opposition to Defendants' importation of Chinese caskets. Bartolacci's affidavit, on the other hand, makes it plain that he presented his objections to a meeting that Presley Melton also attended. These two statements are not directly inconsistent. The Court deems the affidavit a clarification of the deposition testimony. The Bartolacci Affidavit is admissible and constitutes evidence of York's expression of opposition to Defendants' importation plans at the September 2004 meeting at which Presley Melton was present.

Defendants offer an affidavit by Presley Melton stating, to the contrary, that Bartolacci did not object, "either verbally or in writing, to any actions by the Melton

Defendants." Affidavit of Presley Melton, Plaintiff's Motion for Partial Summary Judgment Exhibit 2 [Doc. # 23], ¶ 6. On a summary judgment motion, the Court must construe all evidence and draw all inferences in the light most favorable to the non-movant, here, York. *Reaves*, 336 F.3d at 412. Therefore, the parties have presented evidence that creates a genuine issue of material fact about whether Bartolacci meaningfully informed Defendants of his objections to their plans when he became aware of them.

***Was the Alleged Delay Inexcusable?*** — Defendants also argue that there is no genuine and material fact issue concerning the second element of the laches defense, whether the delay between the September 2004 meeting and York filing suit in December 2005 was "inexcusable." *Johnson*, 398 F.3d at 344. York has submitted summary judgment evidence, the Bartolacci Affidavit, explaining that it delayed its suit for several months while negotiating with Defendants to renew the Agreement and possibly resolve the dispute amicably. Defendants contest York's characterization of the negotiations, but have not pointed out an absence of evidence on York's behalf on this element. *See Duffy*, 44 F.3d at 312. Defendants rely on an affidavit from Presley Melton that the negotiations York mentions never addressed the imported Chinese caskets or an amicable resolution to that dispute. As discussed above, the Court reviews these conflicting affidavits in the light most favorable to the non-movant. *See, e.g., Reaves*, 336 F.3d at 412. Thus, York has demonstrated a genuine issue of material fact as to whether any delay that occurred between York's learning of Defendants' importation plans and voicing its objection was excusable.

***Were Defendants Prejudiced?*** — Even if Defendants had shown the absence of a genuine material fact dispute on the existence of delay that was inexcusable, the defense of laches requires Defendants to demonstrate that they were "prejudiced" by that delay. To prove prejudice in this context, the delay must cause "a disadvantage in asserting and establishing a claimed right or defense." *See Nat'l Ass'n of Gov't Employees,* 40 F.3d at 710 (citing *Matter of Bogart*, 743 F.2d 313, 327 (5th Cir. 1984)); *Baylor University Medical Center v. Heckler*, 758 F.2d 1052, 1058 (5th Cir. 1985) ("Laches contemplates harm resulting from delay; prejudice does not arise "merely because one loses what otherwise he would have kept." (citing *In re Bogart*, 743 F.2d 313, 327 (5th Cir. 1984)). The Fifth Circuit has explained that "[t]he requirement of demonstrating prejudice dovetails with the equitable nature of laches as a doctrine 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Id.* (citing *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)); *see Nat'l Ass'n of Gov't Employees,* 40 F.3d at 710-11; *Cruz v. Hack*, 762 F.2d 1230, 1238 (5th Cir. 1985); *Esso International, Inc. v. SS Captain John*, 443 F.2d 1144 (5th Cir. 1971) ("Prejudicial harm does not occur merely because one loses what he otherwise would have kept."); *Save Our Wetlands, Inc. (SCOWL) v. U.S. Army Corps of Engineers*, 549 F.2d 1021, 1150 (5th Cir. 1977) ("In assessing the degree of prejudice to the defendants in this case, we are required to balance the equities, considering both the expenditures which have been made by the defendants and the environmental benefits which might result if the plaintiffs are allowed to proceed with this litigation.).

Defendants do not argue that York's delay harmed their ability to assert a particular right or defense. They argue instead that they are economically prejudiced in that any damages to York that accrued during the laches period would have been avoided had York merely informed Defendants of its objections.[3] There is a serious question whether this type of reliance is legally sufficient to satisfy the "prejudice" prong of the laches doctrine. This argument more appropriately speaks to the issue of mitigation that Defendants assert in response to York's claims for damages. Nevertheless, assuming for present purposes that Defendants' theory is legally viable, there is a genuine fact issue whether Defendants would have terminated their plans had they known of York's opposition. There is a fact issue whether Defendants reasonably believed that York did not object to their use of the model names and designs of caskets that resemble York's names and designs, and whether Defendants believed that York did not object to Defendants' sale of products made in China and imported to the United States without a country of origin label. Thus, Defendants fail to demonstrate the absence of genuine issues of material fact that they detrimentally changed their position in reliance on York's alleged delay.

In sum, Defendants have not shown as a matter of law that they are entitled to prevail on their defense of laches and their motion for summary judgment is denied in that regard.

---

[3]   Defendants cite *A.C. Ackerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), a patent case. That case is not binding in the Fifth Circuit. Notably, certain of the rulings in *A.C. Ackerman* rely on doctrines particular to the patent arena rather than federal common law. To the extent that case is inconsistent with the result here, the Court concludes the case is not persuasive authority.

### III.     MITIGATION

Defendants contend that York had an affirmative duty to mitigate its damages, and failed to satisfy this obligation under Texas law. *See Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 225-26 (Tex. App.—San Antonio 1999, no writ); *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 29 (5th Cir. 1992). Defendants acknowledge that a mitigation defense would require a showing that York failed to notify them of objections to their conduct and that this failure aggravated York's alleged damages. York points to its summary judgment evidence that it first became aware of Defendants' allegedly objectionable conduct and voiced objection to it the same day. As discussed above, there is a genuine issue of material fact about when York notified Defendants of its objections. This fact issue precludes summary judgment on the mitigation defense.

### V.     CONCLUSION

There are genuine issues of material fact on each element of Defendants's laches defense and on the defense of mitigation. Defendants therefore have not demonstrated entitlement to summary judgment on these defenses. It is therefore

**ORDERED** that the Motion for Partial Summary Judgment [Doc. # 23] filed by all Defendants is **DENIED**.

**SIGNED** at Houston, Texas, this **10th** day of **October, 2006**.

_Nancy F. Atlas_
Nancy F. Atlas
United States District Judge