# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0262 |
| | § | |
| YORK SOUTHERN, INC., *et al.*, | § | |
|     Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

This is a civil commercial lawsuit brought by Plaintiff The York Group, Inc. ("York") against Defendants York Southern, Inc., Ellis Melton Company, Inc. ("EMC"), Melton Company, Inc., Presley Melton, Mark Melton, and Adam Melton (collectively, the "Melton Defendants"). York has filed a Motion for Partial Summary Judgment ("York's Motion") [Doc. # 18] seeking judgment on liability on its breach of contract and Lanham Act claims.[1] The Melton Defendants have filed a Response [Doc. # 27], and York has replied [Doc. # 28]. Having considered the parties' submissions,[2] all matters of record, and applicable legal authorities, the Court concludes that York's Motion should be **denied**.

---

[1]     York moves for partial summary judgment on its breach of contract claim against EMC, now known as York Southern, Inc. *See* Complaint at 11, ¶ 37; York's Motion at 2. York moves for partial summary judgment on its Lanham Act claim against all Melton Defendants.

[2]     In its Reply York objects to the declarations of Presley, Mark, and Adam Melton submitted as summary judgment evidence with the Melton Defendants' Response. The Court will rely on these declarations only to the extent they are not conclusory and are based upon personal knowledge.

## I.   __FACTUAL BACKGROUND__

The undisputed evidence in the summary judgment record establishes the following facts.   York manufacturers caskets and funerary items that it sells through various distributors.  York and EMC entered into a written distributorship agreement ("Agreement") that stipulates that the distributor will use "its best efforts to promote, sell, and serve York-brand caskets."  Agreement, § 1.2(b).  It also directs the distributor to use "its good faith best efforts actively and aggressively to sell and promote the sale of the Products."  *Id*., § 5.1(c).  The Agreement also contains provisions governing the distributor's use of York's "trademarks, trade names, service marks, copyrights, patents, brand names, labels, symbols or other proprietary rights."  *Id*., § 4.1.  Under the Agreement, EMC acted as an authorized York distributor and sold primarily York products.  Under the Agreement, upon termination, EMC committed to "not thereafter use any trademark, trade name, servicemark, brand name, label or symbol which gives or may give the impression that the relationship between the parties . . . still exists, or do any other act tending to impair or damage the Marks."  *Id*., § 4.2.  York sues EMC for breach of various provisions on the Agreement, *see* Plaintiff's First Amended Complaint ("Complaint"), at 10-11, but moves for summary judgment against EMC only on the theory that it breached the Agreement by failing to use its "best efforts" on York's behalf and by appropriating its trademark, brand names, and other intellectual property to market competing products.

York has also accused several of its distributors of violating the Agreement and the Lanham Act, 15 U.S.C. § 1125 *et seq*., by importing Chinese-manufactured caskets without

individually labeling them "Made in China."  The imports were purportedly physically similar to York's products, and marketed in the United States under similar model names. York's theory of recovery advanced in its summary judgment motion is that Defendants' failure to properly label the imports violated the Tariff Act of 1930, 19 U.S.C. § 1304 ("Tariff Act").  Accordingly, York urges, "[as] a matter of law, the Melton Defendants violated the Lanham Act § 43(a) and engaged in misleading or deceptive acts."  York's Motion, at 17.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant

"only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

III.    **BREACH OF CONTRACT**

One of York's breach of contract theories is that EMC failed to use its "best efforts" to market York's products.  *See* Complaint, ¶ 37 (quoting Agreement, § 5.1(c)).  Under Texas law, "a best efforts contract must set some kind of goal or guideline against which best efforts may be measured" in order to be enforceable.  *Herrmann Holdings, Ltd. V. Lucent Technologies, Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (citing *CKB & Associates, Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 581 (Tex.App.—Dallas 1991, writ denied)).[3]  Because the Agreement does not set a guideline, the Court granted Defendants' motion for summary judgment on this aspect of York's breach of contract claim.  *See* Memorandum and Order [Doc. # 42], dated October 10, 2006.

The Court here addresses York's other breach of contract claim theories, that the Melton Defendants violated provisions of the Agreement requiring Defendants not to use York's trademarks, brand names[4] and other intellectual property after termination of the Agreement.  *See* Complaint, ¶¶ 36-40; Agreement, §§ 4.1, 4.2, 6.5. Texas law requires proof of four elements to prevail on a breach of contract claim: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant

---

[3]      The Agreement provides that Texas law governs its interpretation and all questions pertaining to it.  Agreement, § 8.13.

[4]      York's Motion defines "brand names" as the "casket brand names," or the identifying labels attached to a each casket model.  *See* York's Motion, at 3, 10.  The Melton Defendants dispute this characterization, arguing that the casket names are not "brand names" and so do not qualify as "Marks of York" under the Agreement, § 4.1. *See* Melton Response, at 4.  The Court does not reach this issue, and assumes for the purposes of this memorandum and order that the casket names are in fact "Marks" under the Agreement.

breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Frost Nat'l Bank v. Burgs*, 29 S.W.3d 580, 593 (Tex.App.—Houston [14th Dist.] 2000, no pet.) *(quoted by Bridgmon v. Array Systems Corp.*, 325 F.3d 572, 577 (5th Cir. 2003)).  York bears the initial burden of showing that there is no genuine material issue of fact as to each of these elements. *Lincoln Gen. Ins. Co.*, 401 F.3d at 349.  York has not met its burden as to the fourth element, whether it was damaged.  In light of that finding, the Court declines to reach the question of whether York has shown an absence of any issue of material fact on any of the first three elements.

The Melton Defendants argue that York has failed to show that it was damaged by any action on their part.  In its summary judgment motion, York essentially argues that these Defendants were aware that their actions would cause it damage.  *See* York's Motion, at 9.  These arguments are unavailing.  Under Texas law, York must show that it suffered damage as a result of the alleged breach of contract.  *See, e.g., Frost Nat'l Bank*, 29 S.W.3d at 593; *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 615 (Tex.App.—Texarkana 2002, pet. denied); *Scott v. Sebree*, 986 S.W.2d 364, 372-73 (Tex.App.—Austin 1998, pet. denied).  York has offered no evidence that the alleged breach of the Agreement damaged it.  Conclusory unsupported allegations of injury are insufficient on summary judgment.  York has failed to meet its summary judgment burden to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact" on each element on which York bears the burden of proof at trial.  *See Lincoln Gen. Ins. Co.*, 401 F.3d at 349.

The Court therefore declines on the present record to grant summary judgment on the breach of contract claim.[5]

## IV.   LANHAM ACT CLAIM

York contends the Melton Defendants committed a *per se* Lanham Act violation by failing to designate the imported caskets' country of origin because the Tariff Act requires foreign products be permanently marked with their country of origin.[6]

### A.   Legal Standard

The Lanham Act's purpose is to "make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127).  Section 43(a) of the Lanham Act, as amended and codified at 15 U.S.C. § 1125(a), creates a broad federal remedy that goes beyond mere trademark protection. But it is not intended to have "boundless application as a remedy for unfair trade practices." *Id.*

---

[5]      York need not show, for these purposes, the value of the damages it suffered.  Rather, to prevail on liability York is required to present some evidence that it was damaged in some way.

[6]      The pertinent language of the Tariff Act reads: "Except as hereinafter provided, every article of foreign origin . . . imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article."  19 U.S.C. § 1304(a).

The Court assumes without deciding that a false representation concerning the geographic origin of goods can be a violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1). *See generally Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 598 (4th Cir. 1992); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639 (1st Cir. 1992).

at 28–29 (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)) (internal quotations omitted).   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides in pertinent part:

> Any person who, on or in connection with any goods . . . uses in commerce . . . any false designation of origin . . . which—(A) is likely to cause confusion . . .as to the origin . . . of his or her goods, or (B) in commercial advertising or promotion, misrepresents the . . . geographic origin of his or her or another person's goods . . . shall be liable in a civil action to any person who believes that he or she is likely to be damages by such act.

Subsection (a)(1)(A) creates, *inter alia*, a "false designation of origin" cause of action, while subsection (a)(1)(B) represents a "false advertising" cause of action.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 565 (5th Cir. 2005); *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).  The focus of the pending motion is York's theory that Defendants' sale in the United States of imported Chinese-made caskets a constitutes false geographic "designations of origin" in violation of the Lanham Act.[7]

---

[7]     *See* York's Complaint, at  10, ¶ 33.  York does not separately plead a false advertising claim, and the parties do not make any distinction between such a claim and a claim of false designation of origin.  Any such distinction is immaterial here because the elements for both types of § 43(a) Lanham Act claims are the same in the Fifth Circuit.  *See IQ Products Company v. Pennzoil Products Company*, 305 F.3d 368, 375 (5th Cir. 2002) (setting out five elements of § 43(a) claims).  *See also Two Pesos, Inc.*, 505 U.S. at 780 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?" (internal (continued...)

The Fifth Circuit requires proof of five elements on false advertising and false designation of origin claims under 15 U.S.C. § 1125(a)(1):

(1)     the defendant made a false statement of fact about its product in a commercial advertisement;

(2)     the statement actually deceived or had a tendency to deceive a substantial segment of its audience;

(3)     the deception was material, in that it is likely to influence the purchasing decision;

(4)     the defendant caused the false statement to enter interstate commerce; and

(5)     the plaintiff has been or is likely to be injured as a result.

*IQ Products*, 305 F.3d at 375 (applying § 1125(a)(1)(B)); *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (construing § 1125(a)(1)(A)); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (construing § 1125(a)(1)(B)); *King v. Ames*, 179 F.3d 370, 373–74 (5th Cir. 1999) (construing § 1125(a)(1)(A)).

To succeed on an unfair competition claim for false designation of origin under the Lanham Act, a plaintiff must prove that the false designation of origin is likely to cause confusion among consumers.[8] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769

---

[7]     (...continued)
citations and quotations omitted)).

[8]     The Fifth Circuit utilizes a seven-factor test in determining "likelihood to cause confusion" in a trademark dispute: (1) the type of trademark at issue; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; and (7) actual confusion. *Soc'y of Fin. Examiners*, 41
(continued...)

(1992); *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 224 (5th Cir. 1995); *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985). "Misleading" statements, as contrasted with "false" statements, are actionable only if consumers are actually deceived. "Representations are not shielded from condemnation under [the Lanham Act] simply because they are literally true. The Act's proscriptions against false representation reaches 'innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlining an advertisement . . . as well as blatant falsehoods.'" *Better Business Bureau v. Medical Doctors, Inc.*, 681 F.2d 397, 400 (5th Cir. 1982) (quoting *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981)); *accord William H. Morris Co. v. Group W., Inc.*, 66 F.3d 255, 257-58 (9th Cir. 1995). A plaintiff seeking monetary damages for statements that are "literally false . . . need not introduce evidence on the impact the statements had on consumers." *Pizza Hut, Inc.*, 227 F.3d at 497. If the challenged statements were misleading but not literally false, however, the plaintiff must prove actual deception with "evidence of actual consumer reaction to the challenged advertising or surveys showing that a substantial number of consumers were actually misled by the advertisements." *Id.*

---

(...continued)

      F.3d at 228 n.10. These relate to confusion between competing products, not confusion as to country of origin. There does not appear to be a specific test for what constitutes "likelihood of confusion" in relation to false designation of country of origin.

B.    **Analysis**

York argues in its Motion that the Melton Defendants violated the Tariff Act of 1930 by not labeling their imported caskets as "made in China," that this omission violated the Tariff Act, and that such a violation is a *per se* violation of the Lanham Act § 43(a).   York's summary judgment argument is one narrow theory within broad allegations in the Complaint, which states in pertinent part: "All of [Defendants'] conduct was likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of the conspirators with another person, or as to the origin, sponsorship, or approval of the goods or services, and/or to misrepresent the nature, characteristics, qualities or geographic origin of their goods or services."  Complaint, ¶ 33.

York's request for partial summary judgment on its Lanham Act claim regarding the false designation of geographic origin relies on two cases, *Bohsei Enterprises Co., U.S.A. v. Porteous Fastener Co.,* 441 F. Supp. 162 (C.D. Cal. 1977), and *Alto Products Corp. v. Ratek Industries Ltd.,*  No. 95 Civ. 3314 (LMM), 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996) (*Alto II*).  These cases do not aid York here.  In *Bohsei,* 441 F. Supp. at 164, the plaintiff alleged that the defendant imported and then repackaged certain industrial fasteners, omitting the country of origin on the new containers.  The plaintiff alleged that the defendant had falsely labeled certain items and omitted any identification of country of origin on others. The district court denied a Rule 12(b)(6) motion to dismiss the plaintiff's Lanham Act "false designation of origin" claim, stating: "The law of false representation must necessarily include the omission of the material fact of origin that affirmatively says in the context in

which [products] are sold, 'I am a product of the United States.'" *Id.* at 163–64.  The court

determined that it would be "utterly naive" to "hold that omission of such a material fact is

not such a false representation as to affect the competition," and that failure to allow a cause

of action under the Lanham Act based on omission of information designating a product's

origin would promote active disregard for the provisions of the Tariff Act.  *Id.*[9]  *Bohsei* thus

stands for the proposition that the designation of the country of origin on imported goods is

a material fact for Lanham Act "false designation of origin" purposes under § 43(a), and that

dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is

inappropriate when a plaintiff alleges that the defendant has expressly falsely designated a

product's geographic origin or has omitted any indication that a product is imported rather

than domestically made.  The court did not address likelihood of confusion or what else must

---

[9]      The court's comments should be read in context:

> Concern over the materiality of such an omission particularly in the context of imported goods was expressed by Congress when it enacted 19 U.S.C. § 1304 requiring imported articles to be "marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser . . . the country of origin of the article."  To hold that omission of such a material fact is not such a false representation as to affect the competition of the sale to the detriment of a seller who complies with the mandate of 19 U.S.C. § 1304 requires an utterly naive view of the realities of the market place.  More importantly, it would promote disregard for the provisions of 19 U.S.C. § 1304.

*Id.* at 165.  This ruling was in line with the Ninth Circuit doctrine that likelihood of confusion may be determined by the court as a matter of law under certain circumstances.  *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1075-76 (9th Cir. 2006); *J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190-91 (9th Cir. 1975).

be shown for the plaintiff to prevail on such a claim.  Nor did the *Bohsei* court rule expressly that proof of a Tariff Act violation is a *per se* violation of the Lanham Act.

Almost twenty years later, a District Court in the Southern District of New York, held in *Alto II* that "failure to designate country of origin in violation of the Tariff Act violates § 43(a) of the Lanham Act as a matter of law."  1996 WL 497027 at *5; *see id.* at *8.  The *Alto II* court granted summary judgment to the plaintiff on the issue of liability under § 43(a) of the Lanham Act because there was no dispute that the defendant, a foreign manufacturer, failed to designate the country of origin in the manner required by the Tariff Act and had knowledge that the goods would be resold in the United States unmarked.  *Id.* at *8.  The *Alto II* court based its decision on "the respect which [the Tariff Act] must be accorded and this Court's prior acknowledgment of the logic supporting *Bohsei*."  *Id.* at *5 (citations omitted). [10]  The New York court then granted the plaintiff's request for injunctive relief under the Lanham Act.  The court there noted that in order to obtain such relief, the plaintiff must demonstrate that the failure to designate country of origin resulted in a likelihood of causing confusion on the part of the buying public.  The court stated that proof of a Tariff Act violation of failing to mark the country of origin on imported goods will establish "a *presumption* among consumers that unmarked goods are made in the United States"

---

[10]     Two years earlier, the same court held that failure to designate a product as foreign-made *may* state a cause of action under § 43(a) of the Lanham Act.  *Alto Prods. Corp. v. Tri Component Prods. Corp.*, No. 93 CIV 3076 (LMM), 1994 WL 689418, at *3 (S.D.N.Y. Dec. 8, 1994) ("*Alto I*").  The court in *Alto I*, however, did not reach the legal viability of such a claim, since the only question presented was that of subject matter jurisdiction in response to a 12(b)(1) motion to dismiss.

(emphasis added) and held that the existence of the Tariff Act violation for failing to properly designate national origin [of the goods] establishes 'a likelihood of deception or confusion on the part of the buying public' as to the national origin of the product." *Id.* at *8. To the extent that the *Alto II* ruling supports the theory that failure to mark the country of origin on imported goods in compliance with the Tariff Act is a *per se* violation of § 43(a) of the Lanham Act, the case is not persuasive authority in this District or Circuit and the Court respectfully declines to adopt the New York court's reasoning. *Alto II*'s conclusion must be read in the context of the Second Circuit's rule that the "likelihood of confusion" element of a Lanham Act claim is a decision for the court as a matter of law. *See Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584–85 (2d Cir. 1993).[11] The Fifth Circuit, in contrast, treats the issue of "likely to cause confusion" as a question of fact. *Soc'y of Fin. Examiners*, 41 F.3d at 225; *Marathon Mfg. Co.*, 767 F.2d at 217.[12] Moreover, the evidentiary record before the court in *Alto II* was undisputed, unlike the record here.

The Court now analyzes the available authority in the Fifth Circuit. Although that court has not specifically addressed the question of whether a violation of the Tariff Act

---

[11]    The Sixth Circuit similarly treats the issue of likelihood of confusion as a mixed question of fact and law; where the foundational facts are treated as questions of fact, but the ultimate issue of likelihood of confusion is a matter of law. *See Paddington Corp.*, 996 F.2d at 584–85; *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002).

[12]    The Seventh, Eighth, Tenth and Eleventh Circuits also treat the issue of likelihood to cause confusion as a question of fact. *See Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 509 (8th Cir. 2004); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000); *Coherent, Inc. v. Coherent Tech., Inc.*, 935 F.2d 1122, 1125 (10th Cir. 1991); *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

proves a *per se* violation of § 43(a) of the Lanham Act, it has addressed a plaintiff's contention that a putative violation of another regulatory statute does not constitute a *per se* violation of § 43(a).

In *IQ Products Company v. Pennzoil Products Company*, 305 F.3d 368, 375 (5th Cir. 2002), the plaintiff alleged that its competitor violated the Federal Hazardous Substances Act ("FHSA") by not labeling its products as "flammable." The plaintiff then urged essentially that the FHSA violation was a *per se* violation of the Lanham Act. *See id.* at 372-73. In reviewing the FHSA, the Fifth Circuit noted that the Consumer Product Safety Commission ("CPSC") is "responsible for enforcing the FHSA and promulgating, interpreting, and enforcing regulations under the FHSA"; that the CPSC has the authority to determine whether or not to pursue violations of the FHSA; and that "the FHSA does not authorize a private cause of action." *Id.* at 373. The Fifth Circuit then rejected the plaintiff's theory and stated that "[the plaintiff] essentially seeks to enforce the labeling requirements of the FHSA—an action which the CPSC, the enforcing agency, declined to do. For these reasons, we conclude that the defendants' failure to label the product in keeping with FHSA regulations, even if true, does not constitute a false or misleading statement that is actionable under the Lanham Act."[13] *Id.* at 374. The Fifth Circuit thus expressed its refusal to interfere with or predict factual determinations by administrative agencies charged with the duty of

---

[13]   The district court below had previously held that it was impermissible to "circumvent the FHSA by converting the Lanham Act into a vehicle to enforce the FHSA, which bars private actions, and to usurp the regulatory function of the CPSC here." *IQ Prods. Co.*, 305 F.3d at 373 (internal quotations omitted).

interpreting and enforcing technical laws.  It also emphasized that the Court should not allow a party under another guise of a Lanham Act claim to create a private right of action where none exists under the regulatory or statutory scheme.  York's argument that an alleged Tariff Act violation is a *per se* violation of the Lanham Act runs afoul of the Fifth Circuit's analysis, and is rejected.

Bolstering this conclusion is the fact that York's theory has never been endorsed by the administrative agency with expertise in tariff regulation.  At most, the United States International Trade Commission[14] has held that evidence of improper designation of origin may be relevant to a Lanham Act "false designation of origin" claim, not that there was a violation of the Tariff Act or that such a violation would resolve the Lanham Act claim.  *See In re Certain Caulking Guns*, 223 U.S.P.Q. (BNA) 388, 406 (Int'l Trade Comm'n 1984); *In re Certain Surveying Devices*, 208 U.S.P.Q. (BNA) 36, 47–48 (Int'l Trade Comm'n 1980).

The Court therefore concludes that York's Lanham Act theory that a Tariff Act violation constitutes a *per se* violation of § 43(a) is not legally viable.

The Court does not reach the evidentiary question of whether facts suggesting a violation of the Tariff Act's marking requirements are relevant to any element of York's

---

[14]  The International Trade Commission, as organized by 19 U.S.C. § 1330 *et seq*, "is an independent, quasijudicial Federal agency with broad investigative responsibilities on matters of trade" that, among other duties, "adjudicates cases involving alleged infringement by imports of intellectual property rights."  *See* "About Us," U. S. International Trade Commission, *available at* http://www.usitc.gov/ext_relations/about_itc/index.htm.

Lanham Act claims and thus admissible in evidence at trial.[15]  This ruling also addresses only York's theory raised on summary judgment and *not* what appear to be other theories of liability York asserts in its Complaint.  Notably, the Fifth Circuit in *IQ Products* relied heavily on *Mylan Labs. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), a case in which the plaintiff alleged that the defendants violated the Lanham Act both by improperly claiming that its drugs were FDA-approved, in violation of the Food, Drug, and Cosmetic Act ("FDCA"), and by representing that they were "bioequivalent" to the plaintiff's products.  *Id*. at 1137-38.  The Fourth Circuit held in *Mylan Labs* that the plaintiffs could not proceed on their first theory because a violation of the FDCA did not create a cause of action under the Lanham Act.  *Id*. at 1139.  But, because the plaintiffs' "bioequivalency" theory sounded under the Lanham Act itself, without requiring a predicate violation of another statute, the plaintiffs were allowed to proceed on that theory.  *Id*.  Here, York's narrow Tariff Act theory proposed in its summary judgment motion is legally insufficient under Fifth Circuit precedent in that an alleged Tariff Act labeling violation does not establish *per se* a Lanham Act violation or likelihood of confusion.  To the extent York intends to proceed on its other theories under the Lanham Act as articulated in the Complaint, the claim may proceed.

---

[15]   Just as the International Trade Commission held that evidence of improper labeling was relevant to a § 43(a) claim, the Court at an appropriate time will entertain argument on whether the parties may argue that there is a clear violation of the Tariff Act and, if so, what evidentiary value any such violation may have at trial.

V.      **CONCLUSION**

York has failed to meet its summary judgment burden on either its breach of contract or Lanham Act claims.   Accordingly, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment [Doc. # 18] filed by The York  Group, Inc. is **DENIED**.

**SIGNED** at Houston, Texas, this **26th** day of **October, 2006**.

Nancy F. Atlas
United States District Judge