# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0262 |
| | § | |
| HORIZON CASKET GROUP, INC., | § | |
| *et al.*, | § | |
| Defendants. | § | |

----------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2181 |
| | § | |
| HORIZON CASKET GROUP, INC., | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil commercial lawsuit brought by Plaintiff The York Group, Inc.

("York") against various defendants, including Horizon Casket Group, Inc.

("Horizon").  Horizon has filed a Motion for Summary Judgment ("Motion") [Doc.

# 154 in Case No. 05-2181[1]] seeking dismissal of several of York's claims.  The Court

---

[1]     This case was originally filed as *The York Group, Inc. v. York Southern, Inc., et al.*, but
numerous defendants including York Southern, Inc., have been dismissed.  Therefore, for the
(continued...)

has considered the Motion, York's Response [Doc. # 98], and Defendants' Reply [Doc. # 105].  The Court also has considered all pertinent matters of record and applicable legal authorities, and concludes that Horizon's Motion for Summary Judgment should be **denied**.

## I.    FACTUAL BACKGROUND

The undisputed factual record is set out in more detail in the Court's Memorandum and Order of October 12, 2006 [Doc. # 108 in Case No. 05-2181]. Briefly, York manufactures funerary caskets that are purchased by distributors who, in turn, sell them to funeral homes throughout the United States.  In 2002, a group of York's distributors decided to have caskets manufactured in China for sale in the United States.  The distributors formed a new corporation, Horizon, to effectuate this plan.  By 2004, the distributors obtained Chinese-manufactured caskets which they sold in United States markets where York also sold its products.  These imported caskets were allegedly branded as "Horizon" caskets.  York contends that Defendants' importation and sale of the Chinese caskets breached its distributorship agreements

---

[1]      (...continued)
sake of clarity, the Court refers in the caption to Horizon Casket Group, Inc. as the lead defendant.  Furthermore, this case has become the master case into which an earlier-filed case, *The York Group, Inc. v. Horizon Casket  Group, Inc., et al.*, Civil Action No. H-05-2181, was consolidated.  Horizon's Motion and many of the documents pertinent to it were filed in the earlier case and are cited accordingly.  After consolidation, however, the parties and the Court filed documents only in the instant case, Civil Action No. H-06-0262.  The Court designates documents filed in this case with the simple reference "Doc. # __."

with some Defendants, constituted tortious interference with certain contracts, and violated the Lanham Act.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *de la O v. Housing Authority*, 417 F.3d 495, 501 (5th Cir. 2005).  If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial.  FED. R. CIV. P. 56(e).  The court construes all facts and considers all evidence in the light most favorable to the nonmoving party.  *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 416 (5th Cir. 2006).

## III.   ANALYSIS

**Tortious Interference.** — York claims that Horizon tortiously interfered with various  distribution agreements it had with distributors.  York theorizes that Horizon "participated in the scheme to import, market, distribute and/or sell the 'duplicate' caskets in interstate commerce," with the knowledge that "such conduct interfered or

was likely to interfere with York's contracts with various of its distributors . . . thereby
diminishing the value of said contracts to York."[2]  Horizon incorporates the arguments
made by the Delta Defendants as to one aspect of this claim.[3]  Horizon contends that,
because the Court concluded that a "best efforts" clause in York's contract with the
Melton Defendants was unenforceable,[4] no distributor agreement containing such
language can be the basis of a claim for tortious interference with contract.[5]  York
argues that Texas law recognizes claims for tortious interference with "unenforceable"
contracts and therefore the unenforceability of the "best efforts" provision does not
preclude a claim for tortious interference with the distributor agreements that contain
such a clause.[6]  The Court is persuaded by York's argument.

The outcome of Horizon's argument centers on an understanding of the leading
case of *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 (Tex.
1990).  The Texas Supreme Court in *Juliette Fowler Homes* explained that to prove a

---

[2]     Second Amended Complaint, at 12, ¶ 40.

[3]     *See* Motion, at 3 (citing Motion for Summary Judgment ("Delta Motion") [Doc. # 142 in
        Case No. 05-2181], at 17-19).

[4]     *See* Memorandum and Order of October 10, 2006 ("October Memorandum") [Doc. # 42]
        (holding that, because the Distributorship Agreement between York and other distributor
        defendants did not set a "goal or guideline" against which to measure "best efforts," the
        clause is unenforceable under Texas law).

[5]     *See* Delta Motion, at 17.

[6]     *See* Response to Delta Motion [Doc. # 99], at 5.

tortious interference with contract claim, there must exist "a valid contract." *Id.* at 664 (citing *Steinmetz & Assoc., Inc. v. Crow*, 700 S.W.2d 276, 277 n.1 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).  The court explained the general rule that "even an unenforceable contract may serve as the basis for a tortious interference claim if the contract is not void," *id.* (citing *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex. 1969)),[7] and emphasized that "mere unenforceability of a contract is not a defense to an action for tortious interference with its performance." *Id.*  The court then created an exception to the general rule and held that a tortious interference claim may not be grounded on a contract that was "void or illegal," or where there is "any public policy opposing its performance." *Id.* at 664-65 (citing *Clements*, 437 S.W.2d at 821).  On the facts before it, the *Juliette Fowler Homes* court concluded that "the noncompetition clause in the contract [before it] is an unreasonable restraint of trade and unenforceable on grounds of public policy," *id.* at 665, and that "covenants not to compete which are unreasonable restraints of trade and unenforceable on grounds of public policy cannot form the basis of an action for tortious interference." *Id.* (citing *NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1543-1544 (5th Cir. 1985); *Hi-Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d 1359, 1362 (5th Cir. 1985)).

---

[7]     In *Clements*, the Texas Supreme Court stated: "In holding that the unenforceability of the contract is *no defense* to an action for tortious interference with its performance, we are with the great weight of authority in this country." 437 S.W.2d at 821 (citations omitted; emphasis added).

In the October Memorandum, the Court concluded that the "best efforts" clause in the York distribution agreements is unenforceable because there was no "goal or guideline" against which to measure "best efforts." While unenforceable in the context of a claim for breach of contract, there is nothing about the clause that makes it void as illegal or against public policy.[8] York cites no authority to the contrary and the Court can conceive of none. York does not rely on a contract containing a covenant not to compete as in *Juliette Fowler Homes*. Thus, the general Texas rule applies and York may rely on interference with the "best efforts" clause in its distributors'

---

[8] "Void" is defined as "[o]f no legal effect; null." BLACK'S LAW DICTIONARY 1568 (1999). A "void contract" is defined as "a contract that is of no legal effect, so that there is really no contract in existence at all." *Id.* at 326. "Voidable" is defined to mean "[v]alid until annulled; esp., (of a contract capable of being affirmed or rejected at the option of one of the parties." *Id.* "Unenforceable" means as to a contract, "valid but incapable of being enforced." *Id.* at 1529. Nevertheless, the distinction between "unenforceable" and "void" is not well-defined under Texas law. *Juliette Fowler Homes* cites only *Clements* in connection with the distinction, and *Clements* addresses the concept of voidness only obliquely, holding that the contract in that case "is not a void or illegal contract, nor is there any public policy opposing its performance." *Clements*, 437 S.W.2d at 821. At least one Texas appellate court writing after *Juliette Fowler Homes* has held that, despite *Juliette Fowler Homes'* and *Clements'* tangential mention of "void" contracts, any contract that is not illegal and does not contravene public policy will support an action for tortious interference. *See Exxon Corp. v. Allsup*, 808 S.W.2d 648, 654-55 (Tex. App.—Corpus Christi 1991, writ denied) ("Unless the contract is illegal or otherwise against public policy, the defendant may not raise unenforceability of the contract as a defense.").

agreements for its tortious interference claim.[9]  Horizon's argument founded on the unenforceability of the "best efforts" clause is rejected.

Horizon also argues that the "best efforts" clause at issue "provides no means of judging and assessing damages, and thus Horizon is entitled to summary judgment on these claims."[10]  Horizon correctly notes that actual damages are an element of a tortious interference claim, *see Juliette Fowler Homes*, 793 S.W.2d at 664. Furthermore, "[t]here can be no recovery for damages which are speculative or conjectural." *Exxon Corp. v. Miesch*, 180 S.W.3d 299, 326 (Tex. App.—Corpus Christi 2005, pet. filed) (citing *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.); *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 159 (Tex. App.—Eastland 2001, pet. denied)); *see also Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006) (under Texas law, damages based on lost profits "must be established with 'reasonable certainty'" and not "speculative, uncertain, contingent, or hypothetical") (citing *Texas Instruments Incorp. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 281 (Tex. 1994); *Carter v. Steverson & Co.*, 106 S.W.3d 161, 165-66 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).  To prevail

---

[9]     It is unclear whether York is alleging that Horizon tortiously interfered with other clauses in the distributors' agreements.

[10]    Delta Motion, at 18.

at trial on a tortious interference claim against Horizon, York must present evidence that it suffered legally recoverable damages caused by Horizon's tortious conduct.[11]

The Court cannot determine at this juncture whether York has presented a claim for legally cognizable damages on the tortious interference claim against Horizon. York has articulated a theory supported by reports from a skilled expert.[12] However, the logic underlying the damage calculations against Horizon is not clear.  Aside from the concern about inherent speculativeness of the damages arising from breach of the "best efforts" clause, the damages York seeks appear to flow from conduct of the various distributors, such as the Delta Defendants, and not from conduct by Horizon *per se*, which apparently neither purchased nor sold caskets itself.[13]  The Court cannot determine the legal validity of York's damages theory without more information.[14]  Thus, the Court declines to decide whether York has met its summary judgment burden

---

[11]     York, of course, must also identify the precise contract and clause with which it claims Horizon tortiously interfered.

[12]     *See* Expert Report of Walter Bratic ("Bratic's Report"), Response to Delta Motion, Exhibit B, at 3 ("Due to the alleged tortious interference by the Defendants, York has suffered lost profits of approximately $3.5 million."); Sur-Rebuttal Expert Report of Walter Bratic ("Bratic's Rebuttal Report"), Response, Exhibit C, at 8 (opining damages from tortious interference to be $4.6 million).

[13]     *See* Bratic's Report, at 10 ("the Delta Defendants began ordering the Duplicate Caskets . . . [,] initially purchased the[m,] . . . and then resold most of the Duplicate Caskets to the rest of the Horizon Group.")); Bratic's Rebuttal Report, at 7 ("Jamestown International . . . [and affiliates] . . . invoiced orders of Duplicate Caskets" and "invoices from the other members fo the Horizon Group were also not included").

[14]     Horizon, while objecting to York's expert's opinions, has not challenged their admissibility.

on the existence of damages for the tortious interference claim against Horizon.[15]  The Court will conduct a pre-trial evidentiary hearing pursuant to Rule 104 of the Federal Rules of Civil Procedure to assess the legal viability of the damages theory that York espouses against Horizon.

**Trade Dress Infringement.** — Horizon argues that York "claims trade duress [*sic*] infringement as part of its unfair competition and trademark infringement claim in its Complaint," and moves for summary judgment, adopting the reasoning set forth by the Delta Defendants in their Motion for Partial Summary Judgment ("Delta Motion") [Doc. # 142 in Case No. 05-2181].[16]  York clearly has abjured any intention of asserting a trade dress infringement claim.[17]  The Court relies on York's representation. Summary judgment is denied on this aspect of Horizon's Motion, as it is moot.

**Limitation of Damages.** — Finally, Horizon argues that the limitation of damages clause in the contracts York maintained with its distributors should apply to limit its liability to York.[18]  Horizon stipulates that it was not a party to or an intended

---

[15]     The Court also does not imply that it endorses York's fundamental theory against Horizon – and other Defendants – that Defendants' purchases of Chinese caskets *per se* is sufficient to establish recoverable damages caused by tortious interference with York's distributors' contracts.

[16]     Horizon Motion, at 3.

[17]     *See* Horizon Motion, at 3; Response, at 2.

[18]     *See* Horizon Motion, at 4.

beneficiary of those distribution contracts.[19]  Instead, it argues, by analogy to the

arbitration context, that "[e]ach of the Distributor Agreements contain a Limitation of

Liability provision similar to that in the 1999 Distributor Agreement between York and

the Delta Companies."[20]  York responds that Horizon, not being a party to the

distributor agreements or an anticipated beneficiary of the contracts, may not enforce

the limitations clauses they contain.[21]  *See MCI Telecomm. Corp. v. Texas*, 995 S.W.2d

647, 651 (Tex. 1999) ("In determining whether a third party can enforce a contract, the

intention of the contracting parties is controlling.").  Horizon's reliance on arbitration

cases in which third parties were allowed to enforce arbitration clauses in contracts to

which they were not signatories is misplaced.  York's claims against Horizon are not

based on breach of the contracts with the limitations clauses, but on tortious

---

[19]     *See* Reply, at 5.

[20]     Horizon Motion, at 4. Horizon contends, "damages for tortious interference would *per force* be limited with respect to any interference that results in breach of those contracts." *Id.* Horizon relies on, *inter alia*, *Dennis v. College Station Hosp., L.P.*, 169 S.W.3d 282, 287 (Tex. App.—Waco 2005, pet. denied) ("Claims against a nonsignatory to an arbitration agreement are subject to arbitration if the claims against the nonsignatory 'are based on the same operative facts and are inherently inseparable' from claims which could be asserted against a signatory to the agreement.") (citation omitted); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482 (Tex. App. Dallas 2001, no writ) ("Equitable estoppel allows a nonsignatory to compel arbitration . . . . if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory.").

[21]     York does not dispute Horizon's assertion that each distributor agreement contains a limitation of liability clause identical in all material respects to that in the 1999 Distributor Agreement [the "Agreement"] in the record as Exhibit D to Horizon's Motion.

interference with contract. There is accordingly no identity of claims such as is required to allow a non-signatory to enforce an arbitration clause; the tortious interference claim, in other words, are not "inherently inseparable" from York's separate breach of contract claims. *Dennis*, 169 S.W.3d at 287 (citation omitted). Horizon has not identified any authority for the proposition that a party accused of tortious interference with a contract may enforce to its own benefit a limitation of liability clause in that contract. The Court declines to enforce the limitations clauses in York's contracts as to a claim of tortious interference with those contracts.

Even if the Court were willing to enforce the limitations clauses in favor of a non-signatory, it is clear from the language of the limitations clauses that the clauses do not apply to York's claims against Horizon. The sample limitations clause is Section 7.1 of the exemplar Agreement. It limits "damages recoverable by either party from the other party *under* this Agreement."[22] Its plain language limits recovery of damages founded on breach of contract theories, as those breaches create "damages recoverable . . . under this Agreement." Damages associated with York's related theories, such as tortious interference, may be connected or related to the Agreement, but such damages would be recoverable "under" tort, rather than the Agreement itself, because enforcement of the Agreement would not give York a right to recover under

---

[22]      Agreement, Section 7.1 (emphasis added), Horizon's Motion, Exhibit D.

a tort theory.  Because a claim based on the violation of a duty other than a contractual

obligation would not arise "under" the contract, as required by the clause's plain

language, only damages arising from a breach of contract claim would be subject to the

limitations clauses.  York has not asserted a breach of contract claim against Horizon,

and the limitations clause is therefore inapplicable to York's tortious interference claim

against Horizon.  This aspect of Horizon's Motion is denied.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Horizon's Motion for

Summary Judgment is not meritorious and should be denied.  It is therefore

**ORDERED** that Horizon's Motion for Summary Judgment ("Motion") [Doc.

# 154 in Case No. 05-2181] is **DENIED**.  It is further

**ORDERED** that an **evidentiary hearing** will be held on **August 16, 2007, at

10 a.m.,** at which time York shall present its damages expert, Walter Bratic, for

examination by all parties and the Court to determine the legal viability of the damages

theory on which York relies against Horizon and the other Defendants.

SIGNED at Houston, Texas this 10th day of **July, 2007**.

Nancy F. Atlas
United States District Judge