IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE YORK GROUP, INC., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-06-0262 | |
| § | | |
| HORIZON CASKET GROUP, INC., § | | |
| *et al.*, § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

The Court has before it in this civil commercial lawsuit the Motion to Strike [Doc. # 138] filed by Defendants Delta Casket Company, Inc., Delta Casket Enterprises, Inc.,[1] William W. Grubbs, Jr., and Gerald Kilpatrick (collectively, "Delta Defendants") seeking to strike Plaintiff The York Group, Inc.'s Second Amended Original Complaint ("Second Amended Complaint") on the ground that it contains claims materially more expansive than those permitted by the Court at the June 7, 2007 conference in this and a related case, Civil Action No. H-05-2181. Horizon Casket Group, Inc. ("Horizon") also has filed a motion to strike York's Second Amended

---

[1] These two companies are referred to collectively as "Delta."

Complaint [Doc. # 134 in Case No 05-2181].[2]  The York Group, Inc. ("York") opposes all movants' requested relief,[3] contending that the claims the Delta Defendants and Horizon seek to strike have been in the litigation all along.  York alternatively seeks leave to amend its complaint to include the claims it now has articulated in the Second Amended Complaint.  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that the Delta Defendants' and Horizon's Motions to Strike should be **denied** and York's Motion for Leave to Amend should be **granted**.

I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The undisputed facts are set out in more detail in the Court's prior rulings in this case and Case No. 05-2181.  Briefly, York manufactures caskets that are purchased by distributors who, in turn, sell them to funeral homes throughout the United States.  In 1999, Delta and York entered a written distributorship agreement ("Agreement") that governed Delta's use of York's "trademarks, trade names, service marks, copyrights, patents, brand names, labels, symbols or other proprietary rights."[4]  Delta terminated

---

[2]   The Court in this Memorandum addresses primarily the Delta Defendants' Motion because Horizon's motion is a skeletal "me to" pleading.  The issues regarding Horizon are straightforward and are addressed briefly at the end of this Memorandum.

[3]   *See* York's Response in Opposition to Defendants' Motion to Strike [Doc. # 156] ("York's Response"), at 15.

[4]   Agreement, Section 4.1, at 7.  Collectively, these protectable assets are referred to as "the
(continued...)

the Agreement at the end of 2001. York nevertheless permitted Delta to continue to distribute York caskets. Indeed, York caskets made up the bulk of Delta's sales until 2004.

Meanwhile, in 2002, Delta decided to have caskets manufactured in China for sale in the United States. The Delta Defendants, along with other York distributors, formed The Horizon Group, Inc. ("Horizon"), to implement this plan. By 2004, Delta obtained Chinese-manufactured caskets which it sold in United States markets where York sold its products. These imported caskets were apparently branded as Horizon caskets but were very similar in appearance to York caskets.

In the First Amended Complaint in Case No. 05-2181, filed July 8, 2005, the live pleading in that action, York alleges that Delta's importation and sale of the Chinese caskets constituted: (i) unfair competition and trademark infringement by the Delta Defendants and Horizon, (ii) breach of contract by the Delta companies, (iii) tortious interference by Horizon with the Delta Defendants' distributor contracts with York, (iv) copyright infringement by Delta, and (v) conspiracy by all Defendants to offer to sell low quality Chinese-made counterfeit caskets using the York marks.[5]

---

[4] (...continued)
Marks." *Id*.

[5] York seeks injunctive relief and an accounting against all Defendants on various grounds.

In the First Amended Complaint in Case No. 06-0262, filed April 24, 2006, York claimed that entities and individuals known collectively as the "Melton Defendants" (since dismissed from the litigation) engaged in unfair competition, trademark infringement, breach of contract, tortious interference, and conspiracy arising from Defendants importation and sale in the United States of Chinese-made duplicates of York's caskets.[6]  York did not sue the Delta Defendants in Action No. 06-0262.[7]

On April 27, 2007, the Court consolidated York's two cases into Case No. 06-0262 by granting agreed motions filed by the Delta Defendants and Horizon.[8]

Thereafter, the Court, at a pretrial conference concerning discovery relating to punitive or exemplary damages, directed York to replead its claims in a second amended complaint to clarify the bases for its claim for such damages.  The Court directed York not to add new claims.  The Court noted that, in the First Amended Complaint in Case No. 05-2181, the tortious interference claim against the Delta Defendants appeared to be asserted against only Horizon, not the Delta Defendants,

---

[6]  *See* Plaintiffs' ("Complaint"), *passim*.

[7]  York alleged in the First Amended Complaint in Case No. 05-2181, at 8, ¶ 25, that: "[T]he Melton Defendants, and those acting in concert with them, intentionally interfered with York's contracts with various York distributors, including but not limited to Delta Casket, Delta Enterprises, Yorktown, Warfield-Rohr, Royal and Ellis Melton."

[8]  *See* Motion to Consolidate Lead Case No. 06cv00262 and Member Case No. 05cv2181 [Doc. # 161]; Motion to Consolidate Lead Case No. 05-2181 and Member Case No. 06-0262 [Doc. # 163]; Order To Consolidate Cases [Doc. # 167] dated April 27, 2007.

and referred to Horizon's alleged tortious interference with only the York contract with Delta.

In the Second Amended Complaint, York for the first time plainly alleges that each of the Delta Defendants (as well as Horizon) tortiously interfered with York's distributor contracts with other distributors.[9]

## II.   DISCUSSION

### A.   Delta Defendants' Motion to Strike and York's Motion for Leave to Amend

The Delta Defendants argue that it is too late for York to amend its pleadings in this case, citing Federal Rule of Civil Procedure 15 and *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). To the extent Rule 15 is pertinent, Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607-08 (5th Cir.

---

[9] After close inspection of the First Amended Complaint in Case No. 05-2181, the Court concludes that York had not expressly pleaded a tortious interference claim against any of the Delta Defendants. York's arguments to the contrary are rejected. The Court's statement in the Memorandum and Order entered July 11, 2007 [Doc. # 155 in Case No. 06-0262], pp. 20-21 n.44, that the Court at the June 7, 2007 conference had "held that York's First Amended Complaint [Doc. # 5 in Case No. 05-2181] was adequate, under notice pleading standards, to support a tortious interference claim against the Delta defendants" was in error. Further, the Court erred in its reliance on allegations in York's Second Amended Complaint in which York explicitly asserts this claim against all Defendants, as the Delta Defendants' Motion to Strike that pleading was pending. The Court hereby amends the July 11th Memorandum and Order [Doc. # 155] to delete these comments in their entirety. These comments were immaterial to, and their withdrawal does not alter the outcome of, the motion to which the July 11th Memorandum and Order was directed.

1998). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (citations omitted). However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citations and internal quotation marks omitted); *accord Goldstein*, 340 F.3d at 254; *see, e.g., Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). If the district court lacks a "substantial reason" to deny leave, its discretion is not broad enough to permit denial. *Lyn-Lea*, 283 F.3d at 286; *Lone Star Ladies Inv. Club v. Schlotzky's Inc.*, 238 F.3d 363, 367 (5th Cir. 2001) (denying leave to amend absent articulable reason is an abuse of discretion); *Wimm*, 3 F.3d at 139. In deciding whether to grant leave to file an amended pleading, the district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm*, 3 F.3d at 139 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (leave to amend denied because of bad faith and dilatory motive); *see Goldstein*, 340 F.3d at 254 (citations omitted).

      Before considering whether to allow an amendment of the complaint in this case, the Court must consider whether to extend the August 18, 2006 amendment deadline

established by the Court's March 14, 2006 Docket Control Order ("scheduling order") [Doc. # 59 in Case No. 05-2181; Doc. # 9 in Case No. 06-0262]. In fact, because the Court entered a scheduling order in this case, requests to amend deadlines are to be evaluated under standards related to Rule 16 of the Federal Rules of Civil Procedure. "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.' The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990))). The Fifth Circuit explained: "In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 546 (citing *S&W Enters.*, 315 F.3d at 535).

While both sides have important arguments arising from the omission by York to plead a tortious interference claim against the Delta Defendants,[10] the Court concludes for reasons explained below that York has met its burden to show good cause for extension of the amendment deadline in the scheduling order. The Court addresses each of the Rule 16 factors. First, as to York's reasons for failing to seek to extend the amendment deadline sooner, York essentially argues that, through discovery responses and otherwise, it had informed the Delta Defendants of the fact of the tortious interference claim against those Defendants and of the scope of the claim. From the Delta Defendants' conduct in this litigation, York reasonably believed that from early in this case these Defendants understood the claim was asserted against them. The claim has been expressly asserted against other distributors whom York alleged in one of the First Amended Complaints in the consolidated case had engaged in conduct with the Delta Defendants. Also, York's executive and Rule 30(b)(6) witness, Joseph C. Bartolacci, articulated the theory on April 7, 2006, in his deposition against the Delta Defendants.[11] Further, York's expert damages witness' report, issued

---

[10] York also failed to plead as broad a claim against Horizon as it now seeks to assert.

[11] *See* Deposition of Joseph C. Bartolacci, Exhibit A to York's Response, at 421-22.

December 1, 2006, allocated $3.5 million in damages to the tortious interference claim.[12]

The Delta Defendants' own pleadings and motions evince their understanding that York intended to assert a tortious interference claim against them. Most significantly, it was clear from the pleading in Case No. 06-0262 that York had claimed tortious interference by the individual and corporate Melton Defendants. The Delta Defendants relied on the similarity of that case with the case in which they were named Defendants, Case No. 05-2181, for their motion to consolidate the two cases. In the Motion to Consolidate, the Delta Defendants explained that both cases "share common issues of law and fact" and that the cases already "have been consolidated for discovery purposes."[13] The Delta Defendants also represented:

> In both cases, it is alleged that the parties conspired to manufacture and sell counterfeit caskets and that such alleged conduct constitutes unfair competition, trademark infringement, breach of contract, tort[i]ous interference, copyright infringement, and conspiracy for which York seeks not only injunctive relief, but damages, both actual and punitive.[14]

The Delta Defendants further stated in the motion that "York asserts similar, if not identical, causes of action against the Defendants in both cases sought to be

---

[12]    *See* York's Response, Exhibit C, at 15, ¶ 40.

[13]    Delta Defendants' Motion to Consolidate [Doc. # 163], at 2.

[14]    *Id.*

consolidated, which would clearly involve similar issues of law and similar factual proof."[15] Finally, the Delta Defendants stated that the conspiracy claims were the same and acknowledged that the "alleged conduct which was allegedly carried out in furtherance of the alleged conspiracy resulted in . . . tortious interference with contract . . . ."[16] In reliance on these explanations, on April 27, 2007, the Court granted total consolidation of the two cases.[17]

Further evidence of the Delta Defendants' understanding that York had sued them for tortious interference is their April 5, 2007 a motion for summary judgment

---

[15]   *Id.* at 3-4.

[16]   *Id.* at 4.

[17]   York asks for imposition of judicial estoppel. Application of judicial estoppel rests in the Court's discretion. *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000); *see generally Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996). Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 398-99 (5th Cir. 2003); *Ahrens*, 205 F.3d at 833. Generally, courts have identified two limitations on the application of judicial estoppel: (1) the position of the party to be estopped must be clearly inconsistent with a prior position, and (2) the court must have accepted the prior position. *Coastal Plains*, 179 F.3d at 206; *Ahrens*, 205 F.3d at 833. "[J]udicial acceptance means only that the court has adopted the position urged by a party, *either as a preliminary matter* or part of a final disposition." *Coastal Plains*, 179 F.3d at 206 (emphasis added) (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)). In addition, the court should consider "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hall*, 327 F.3d at 399 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). The Court does not need to reach the judicial estoppel question, but notes that there are strong arguments in favor of its imposition in the circumstances at bar.

seeking dismissal of that claim against them.[18] The Delta Defendants asserted in their summary judgment motion that "York is also seeking to hold the Delta entities liable for tortious interference with other distributors agreements . . . ."[19] Although the Delta Defendants later filed the Motion to Strike and thereby tentatively withdrew the summary judgment request as to the tortious interference claims, the language in the summary judgment motion as filed is strong evidence that the Delta Defendants, prior to April 2007, believed that York asserted a tortious interference claim against them.

Additionally, the Delta Defendants served and York responded to extensive written discovery that covered York's tortious interference theory.[20] Finally, York's conspiracy theory is intertwined with the tortious interference claims. On the first Rule 16 factor, therefore, York's explanation for its failure to move earlier for leave to amend or to seek extension of the amendment deadline was understandable.[21]

---

[18] *See* Doc. # 142 in Case No. 05-2181, filed April 5, 2007.

[19] *Id.* at 6. *See id.* at 8 ("York is seeking to hold the Delta entities liable based on a claim that they interfered with other distributor agreements' best efforts clauses."); *id.* at 10 ("Summary judgment is also appropriate for Gerald Kilpatrick and Bill Grubbs on York's tortious interference with contract claims."); *id.* at 18 ("York here alleges that the Delta Defendants tortiously interfered with, *inter alia*, the best efforts clauses in the distribution agreement of the Melton co-defendants and other distributors.").

[20] The Court is unpersuaded by the Delta Defendants's argument that the discovery related to laches. Whether or not it was pertinent to that theory, the discovery was patently pertinent to York's tortious interference claims and the Delta Defendants' defenses to it.

[21] This ruling in no way condones the omissions in York's pleadings.

As for the second Rule 16 factor, the Court finds that the amendment is important. As a practical matter, the tortious interference theory is factually and potentially legally central to York's case against the Delta Defendants.

Addressing the third and fourth Rule 16 factors, the Delta Defendants assert that there is potential prejudice in allowing the amendment because there will be a need for extensive other discovery, which is precluded by upcoming trial-related deadlines. The Delta Defendants, however, give no details about what discovery would be necessary. The Court finds that this potential prejudice can be cured by extension of the discovery period to allow additional discovery on the tortious interference claim and defenses, and a continuance of various deadlines. The Court will allow the Delta Defendants reasonable time for additional discovery if they provide a meaningful explanation of what is necessary. York thus has demonstrated that an extension of the amendment deadline of the scheduling order is warranted.

The Court turns now to the issue of whether York has satisfied the requirements of Rule 15. The Court finds, based on the facts and analysis above, that the interests of justice dictate that it should exercise its discretion to permit the proposed amendment. While the amendment is late in the case, the delay is not "undue" in light of the parties' discovery and their understanding of the claims York was asserting, as evidenced by the Delta Defendants' motions. The Court further finds that the Delta

Defendants will not suffer undue prejudice from allowing the amendment because the Delta Defendants will be permitted to engage in necessary discovery on the claim. The Court does not find the amendment futile.[22]

Finally, the Court does not rule that the Delta Defendants "'implicitly consented' to trial of a tortious interference claim," as the Delta Defendants characterize York's argument.[23] Rather, the Court finds that this is an unusual case. The parties repeatedly evidenced in this complex litigation that they believed the tortious interference claim was pleaded against the Delta Defendants and litigated this case accordingly. With a continuance to allow the Delta Defendants to complete discovery, if truly necessary, there will be no material prejudice to them from formally including these claims in this consolidated case. York's Motion for Leave to Amend to file the Second Amended Complaint will be granted.

### B. <u>Horizon's Motion to Strike</u>

Horizon's Motion to Strike is a skeletal pleading that adopts Delta Defendants' arguments and provides no individualized contentions. Horizon contends that York should not be allowed to amend at this late time. York plainly pleaded a tortious interference claim against Horizon in the First Amended Complaint [Doc. # 5 in Case

---

[22] See Memorandum and Order [Doc. # 155] dated July 11, 2007, at 21.

[23] *See* Delta Defendants' Reply [Doc. # 159], at 1.

No. 05-2181]. There, York alleged that Horizon interfered with York's distribution contract with Delta. York seeks in the Second Amended Complaint to expand its claim against Horizon by claiming that Horizon tortiously interfered with additional distributor contracts. For reasons comparable to those relating to the Delta Defendants, Horizon's motion is **denied**.

### III.   CONCLUSION AND ORDER

For the reasons set forth above, the Motions to Strike filed by the Delta Defendants and Horizon are denied. It is therefore

**ORDERED** that the Delta Defendants' Motion to Strike [Doc. # 138] is **DENIED**. It is further

**ORDERED** that York's Motion for Leave to Amend [Doc. # 156] is **GRANTED**. York must **FILE** its Second Amended Complaint within **five (5) business days** of entry of this Order. It is further

**ORDERED** that Horizon Casket Group, Inc.'s Motion to Strike York's Unauthorized Pleadings [Doc. # 134] is **DENIED**. It is further

**ORDERED** that if the Delta Defendants and/or Horizon seek additional discovery in light of this ruling, they shall confer with York on a new schedule. If no agreement can be reached, then within ten (10) business days, the Delta Defendants and/or Horizon must file a motion for additional discovery in which they explain

exactly what discovery is needed and suggest new dates to complete that discovery, to file the Joint Pretrial Order, to hold Docket Call, and for trial. Discovery will be permitted only on factual issues pertinent to the tortious interference claims York asserts against the Delta Defendants and Horizon. If the motion is not agreed, York shall file its opposition within seven (7) business days, movants may file a reply within three (3) business days, and the Court will address the motion on an expedited basis.

**SIGNED** at Houston, Texas, this **13th** day of **August, 2007.**

_____
Nancy F. Atlas
United States District Judge